**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STERLING ATKINS,

    *Petitioner-Appellant,*

v.

JEREMY BEAN, Warden; STATE OF
NEVADA ATTORNEY GENERAL'S
OFFICE,

    *Respondents-Appellees.*

No.20-99008

D.C. No.
2:02-cv-01348-
JCM-BNW

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted June 26, 2024
Seattle, Washington

Filed December 2, 2024

Before: Ronald M. Gould, Consuelo M. Callahan, and
Jennifer Sung, Circuit Judges.

Opinion by Judge Callahan

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel affirmed the district court's denial of Sterling Atkins's habeas corpus petition challenging his Nevada conviction for murder, conspiracy to commit murder, and first-degree kidnapping; and his death sentence.

On the first certified issue, the panel held that the Nevada Supreme Court reasonably denied Atkins's claim that trial counsel was ineffective at the penalty phase for failing to investigate and present additional mitigating and social history evidence. The record before the state court did not show what investigation did occur, or how that investigation was deficient, and because the new evidence presented in the federal proceeding was largely cumulative it does not establish prejudice. Atkins's related claim that trial counsel failed to adequately prepare a psychological expert was not properly exhausted in state court, and is now procedurally defaulted. Atkins cannot meet the *Martinez v. Ryan*, 566 U.S. 1 (2012), standard to excuse his default as he did not show prejudice from state postconviction counsel's failure to raise the claim that trial counsel was ineffective. Given that Atkins showed, at most, only one possible failing by counsel, there is no cumulative prejudice to consider.

On the second certified issue, the panel held that Atkins failed to exhaust his challenge to the jury instruction

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

addressing the possibility of parole and did not show cause to excuse that default.

Because he did not show that the outcome on two uncertified issues are debatable among jurists of reason, the panel denied Atkins's request to expand the certificate of appealability.

**COUNSEL**

A. Richard Ellis (argued), A. Richard Ellis Atty. at Law, Mill Valley, California, for Petitioner-Appellant.

Heather D. Procter (argued), Chief Deputy Attorney General; Aaron D. Ford, Attorney General; Nevada Office of the Attorney General, Carson City, Nevada; Jaimie Stilz, Deputy Attorney General, Nevada Office of the Attorney General, Las Vegas, Nevada; for Respondents-Appellees.

## OPINION

CALLAHAN, Circuit Judge:

On the night of January 15, 1994, Petitioner Sterling Atkins, his brother Shawn Atkins,[1] and their friend Anthony Doyle drove Ebony Mason to an isolated desert area outside of Las Vegas where they beat and strangled her to death. A Nevada jury found Atkins guilty of murder, conspiracy to commit murder, first-degree kidnapping, and sexual assault, and sentenced him to death. *Atkins v. Gittere*, No. 02-cv-01348, 2020 WL 3893628, at *2 (D. Nev. July 10, 2020). The Nevada Supreme Court affirmed all counts with the exception of reversing Atkins's conviction for sexual assault. After seeking and being denied state postconviction relief, Atkins brought his federal habeas petition under 28 U.S.C. § 2254 in the United States District Court for the District of Nevada. He now appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition, raising two certified issues and requesting to expand the certificate of appealability on two additional issues.

We affirm the district court's denial of Atkins's petition. On the first certified issue, Atkins's claim that trial counsel was ineffective at the penalty phase for failing to investigate and present additional mitigating and social history evidence was reasonably denied by the Nevada Supreme Court. His related claim that trial counsel failed to adequately prepare the psychological expert was not properly exhausted in state court. Atkins cannot meet the *Martinez v. Ryan*, 566 U.S. 1 (2012), standard to excuse his default as he has not shown prejudice from state postconviction counsel's failure to raise

---

[1] To avoid confusion, we refer to Shawn Atkins by his first name.

the claim that trial counsel was ineffective. On the second certified issue, Atkins failed to exhaust his challenge to the jury instruction addressing the possibility of parole and has not shown cause to excuse that default. Finally, because he has not shown that the outcome on the uncertified issues "are debatable among jurists of reason," *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000), we deny Atkins's request to expand the certificate of appealability.

## I.

### A.

On January 15, 1994, Atkins was at his home with Shawn, Doyle, and Mason. *Atkins,* 2020 WL 3893628, at *1. According to a voluntary statement Shawn gave to the FBI, Mason agreed to accompany the men to Doyle's apartment, where she had consensual sex with Atkins and Shawn but refused Doyle. *Id.* The three men agreed to drive Mason to downtown Las Vegas. At some point, they stopped at a gas station where Mason tried to make a call, but she returned to the truck after Atkins talked to her. The men then drove her to an isolated desert area where Doyle told Mason she had to walk home. As Mason got out of the car, Doyle hit her. He then stripped off her clothes and raped her as Shawn and Atkins watched. Doyle and Atkins then beat and kicked Mason until she died.

The next day, Mason's body was found. There was a four-inch twig protruding from her rectum. She had nine broken ribs as well as multiple areas of external bruising and lacerations, and a ligature mark around her neck. Her body had patterned contusions consistent with footwear impressions, and her head had severe lacerations as well as underlying hemorrhage. The medical examiner found she

"died from asphyxia due to strangulation and/or from blunt trauma to the head."

The police investigation identified Doyle, Atkins, and Shawn as the three suspects. Atkins and Doyle were arrested in Las Vegas, and Shawn was later arrested in Ohio. The State of Nevada charged the three men with one count each of murder, conspiracy to commit murder, robbery,[2] first-degree kidnapping, and sexual assault, and filed notice of its intent to seek the death penalty.[3]

## B.

Atkins was initially represented by lead counsel Anthony Sgro. Co-counsel Laura Melia participated in a preliminary hearing in May 1994 but then stopped working on Atkins's case in June of 1994. Attorney Kent Kozal took her place as co-counsel. According to his declaration, Kozal was a recent law school graduate, "had never tried a jury trial, much less a capital case," "was not qualified under Nevada Supreme Court Rule 250 to serve on a capital case," and had a minimal role in the trial.[4]

---

[2] The robbery count was later dismissed against all three men. *Atkins*, 2020 WL 3893628, at *1.

[3] In a separate trial, Doyle was convicted of the same crimes as Atkins and likewise sentenced to death. *See Doyle v. State*, 921 P.2d 901, 905 (Nev. 1996). Shawn entered into a plea bargain, pleading guilty to first-degree murder and kidnapping and was sentenced to life with the possibility of parole. *Atkins*, 2020 WL 3893628, at *2. As part of his plea deal, Shawn agreed to testify at Atkins's trial, and was the State's only eyewitness. *Id.*

[4] These facts related to Melia and Kozal are taken in part from declarations submitted by the two attorneys as part of Atkins's federal habeas petition. We reference them for background purposes only.

On March 10, 1995—ten days before the start of Atkins's trial—Sgro was unable to continue in his representation of Atkins due to a scheduling conflict with another case. Despite the late date, he filed a motion to withdraw and allow substitution of attorneys, noting that he had contacted Melia and she had indicated her willingness to return to represent Atkins and proceed to trial as scheduled. The court approved the substitution of Melia as lead counsel on March 14, 1995.

## C.

Atkins's trial commenced on March 20, 1995. The State presented testimony from ten police officers, the coroner, and nine lay witnesses. Atkins presented no evidence. During closing, defense counsel argued that although Atkins was present when the crimes were committed, he did not participate in their commission. Counsel attacked the credibility of the State's witnesses, noting many of the lay witnesses had been impeached and admitted to lying to protect Doyle. The jury found Atkins guilty of murder, conspiracy to commit murder, first-degree kidnapping, and sexual assault. *Atkins*, 2020 WL 3893628, at *2.[5]

During the penalty phase of Atkins's trial, which commenced on April 26, 1995, the State presented testimony from Mason's parents on the impact of her murder. The State also presented testimony establishing that, when he murdered Mason, Atkins was on parole for a prior offense where he pled guilty to assault with a deadly weapon.

---

[5] The sexual assault conviction was later overturned by the Nevada Supreme Court for reasons not relevant to this petition. *Atkins v. State*, 923 P.2d 1119, 1129 (Nev. 1996).

As mitigation evidence, Atkins presented testimony from his father Sterling Atkins, Sr.**[6]** Sterling, Sr. admitted to daily substance abuse in front of his children, as well as a turbulent relationship with Atkins's mother that frequently included physical violence. He also acknowledged physically abusing his children, describing being charged for child abuse after burning Shawn's and Atkins's hands on a stove. That charge led to the children being removed from the home and temporarily living in foster care. While maintaining that he did the best he could, Sterling, Sr. testified that he did not know how to raise Atkins, that he was not a good role model, and that Atkins did not grow up in a healthy environment.

Atkins's half-sister Stephanie Normand also testified, confirming Atkins's unstable family life during childhood. She stated that both parents were alcoholics, frequently arguing with each other and the children. She confirmed the incident where Sterling, Sr. burned Atkins's and Shawn's hands, leading to their placement in foster care. She further stated that Sterling, Sr. tended to single Atkins out, and would use wood 2x4s, belts, or any object he could find to beat Atkins. Once when Normand tried to intervene, Sterling, Sr. turned and punched her in the mouth. She also remembered her father making Atkins and Shawn stand in a corner overnight with their hands against the wall. Regarding their mother, Normand related that her substance abuse problems were so bad that Normand would have to pick her up and put her to bed. According to Normand, neither parent was a good role model.

The defense next called a former associate warden for the Nevada Department of Corrections, Jack Hardin. Hardin

---

[6] To avoid confusion, we refer to Sterling Atkins, Sr. as "Sterling, Sr."

described the living conditions and inmate daily life at Ely State Prison, the maximum-security facility used to house Nevada's first-degree murder convicts. In his opinion, it would be traumatic to be sentenced to spend the rest of one's life at Ely State Prison. During cross-examination, the prosecutor elicited testimony from Hardin about the possibility of a pardon or commutation. In response to a question whether the pardons board could commute a sentence from life without the possibility of parole to life with the possibility of parole, Hardin responded it could.

Finally, the defense called Dr. Philip Colosimo, a clinical psychologist. He testified that he had performed three psychological tests on Atkins and met with him a total of six times. Dr. Colosimo determined that Atkins suffered from schizoaffective disorder, meaning "he has signs and symptoms of schizophrenia, disorganized thinking, bizarre mentation, and affective problems." Dr. Colosimo also identified depressive and paranoid thoughts "that the world is out to get him or hurt him." In addition, Dr. Colosimo identified antisocial personality characteristics in Atkins, sometimes referred to as sociopathy or psychopathic behaviors. Dr. Colosimo testified that Atkins showed narcissistic personality characteristics in that he took care of his own needs and was not concerned with the needs of others.

Dr. Colosimo recounted how Atkins reported that he had sustained a head injury "at an adolescent age where he was beaten very heavily in a fight." Dr. Colosimo opined that the head injury may have caused a thought disorder, although he acknowledged during cross-examination that he had not conducted any medical or physiological tests to determine whether Atkins suffered from organic defects. Dr. Colosimo also explained that children who grow up in unsteady

environments often engage in impulsive behaviors and violence. Furthermore, the abuse that Atkins suffered "most certainly had a great impact on [Atkins's] ability to think and reason, process information and to be able to learn." As to Atkins's mental functioning, Dr. Colosimo noted that Atkins's reading was at a third-grade level, spelling was at a second-grade level, arithmetic was at a second-grade level, and that Atkins had a history of low academic achievement and an IQ score well below average. According to Dr. Colosimo, these indicated pronounced learning disabilities as well as attention deficit disorder.

Dr. Colosimo testified that while Atkins was often anxious, impulsive, and unable to comply with the law, he appeared more relaxed while incarcerated as the prison provided him with clear boundaries. Atkins reported hearing voices but remarked the voices were quieter when he was incarcerated. Dr. Colosimo determined that Atkins's impulsive anger and violent behaviors would not likely manifest in a structured prison environment.

On cross-examination, Dr. Colosimo acknowledged that his conclusions were based solely on his interviews and psychological testing, and that he had not reviewed any evidence regarding the facts or circumstances of the charged crimes. Additionally, he concluded that based on the test results and Atkins's version of the facts (including Atkins's denial of any wrongdoing), Atkins was competent at the time of the crimes.

Atkins gave an unsworn allocution statement in which he apologized to the Mason family, accepted the jury verdict, and asked the jury to consider a life sentence.

During closing, the State raised six alleged aggravating circumstances,[7] disputed the potential mitigating circumstances, and asked the jury to return a verdict of death. In arguing against a life sentence with the possibility of parole, the State reminded the jury that Atkins had killed Mason while on parole. Defense counsel argued that life without possibility of parole was sufficient punishment, reminding the jury of the abysmal conditions of Ely State Prison and explaining that life without the possibility of parole meant that Atkins would spend the rest of his life in an extremely limited and controlled environment. Counsel additionally referenced Atkins's abusive childhood. The State in rebuttal argued that Atkins's childhood abuse and personality disorders were not enough to offset the aggravating factors in Mason's murder. Additionally, the State noted that the State Board of Pardons could change a sentence of life without parole to a sentence of life with the possibility of parole.

The jury returned a verdict the next day, finding all six aggravating circumstances had been established beyond a reasonable doubt. Determining that the aggravating

---

[7] The jury found the following six aggravating circumstances: (1) the murder was committed by a person under sentence of imprisonment; (2) the murder was committed while the person was engaged in the commission of or an attempt to commit a sexual assault; (3) the murder was committed while the person was engaged in the commission of or an attempt to commit a first-degree kidnapping; (4) the murder was committed to avoid or prevent a lawful arrest or to effect an escape from custody; (5) the murder involved torture, depravity of mind or the mutilation of the victim; and (6) the murder was committed by a person who was previously convicted of a felony involving the use or threat of violence to the person of another.

circumstances outweighed any mitigating factors, the jury sentenced Atkins to death.

**D.**

Atkins appealed, and the Nevada Supreme Court affirmed all counts with the exception of reversing Atkins's conviction for sexual assault. *Atkins*, 923 P.2d at 1121–29. The United States Supreme Court denied Atkins's petition for a writ of certiorari. *Atkins v. Nevada*, 520 U.S. 1126 (1997). He then filed a state postconviction petition, which was denied by a Nevada trial court in 2001. That denial was affirmed by the Nevada Supreme Court in 2002. *Atkins v. State*, 106 P.3d 1203 (Nev. 2002).

In 2002, Atkins filed his 28 U.S.C. § 2254 petition for writ of habeas corpus in federal district court. After multiple amended petitions and a stay while he returned to state court to exhaust certain claims, the district court reopened federal proceedings in 2015. In 2016, Atkins filed the operative fourth amended petition.[8] In 2017, the district court dismissed several claims on procedural grounds, and in 2020, denied the remaining claims and entered judgment. *Atkins v. Filson*, No. 02-cv-01348, 2017 WL 4349216 (D. Nev. Sept. 28, 2017); *Atkins*, 2020 WL 3893628.

This appeal followed.

**II.**

We review *de novo* a district court's denial of a habeas petition as well as its dismissal for procedural default. *See Gulbrandson v. Ryan*, 738 F.3d 976, 986 (9th Cir. 2013); *Fields v. Calderon*, 125 F.3d 757, 759–60 (9th Cir. 1997).

---

[8] All references in this opinion to the federal petition are to this operative fourth amended petition unless specified otherwise.

Because Atkins's original federal petition was filed after April 24, 1996, our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004). Under AEDPA, we may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

We review the last reasoned state court decision, here the decision from the Nevada Supreme Court.  *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018).  To show the state court decision was contrary to, or an unreasonable application of, clearly established law under 28 U.S.C. § 2254(d)(1), Atkins must show that "there was no reasonable basis for the [Nevada Supreme Court's] decision."  *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (internal quotation marks omitted). Under this deferential standard, even if "'fairminded jurists could disagree' on the correctness of the state court's decision," we defer to the state court's determination. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010). Although "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the [state] court's . . .

determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).

We first discuss the issues on which the district court granted a certificate of appealability before moving to Atkins's request to expand the certificate of appealability to two additional claims.

## III.

The district court granted a certificate of appealability on two issues: First, Atkins's arguments of ineffective assistance of trial counsel at the penalty phase, and second, his claim of instructional error regarding the possibility of commutation.

## A.

Atkins's basis for ineffective assistance of trial counsel at the penalty phase includes three sub-claims: (1) that trial counsel failed to investigate and present additional mitigating social history evidence; (2) that trial counsel were ineffective in their preparation and presentation of Dr. Colosimo; and (3) cumulative prejudice from counsel's deficient performance. We address each in turn and we affirm.

## i.

To begin, we find that Atkins exhausted his claim regarding the alleged failure of trial counsel to investigate and present mitigating social history evidence, and that the Nevada Supreme Court reasonably denied the claim.

Under AEDPA, Atkins cannot obtain relief unless he has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To exhaust, a petitioner must "fairly present his federal claims to the highest state court

available." *Davis v. Silva*, 511 F.3d 1005, 1008 (9th Cir. 2008) (internal quotations and alteration omitted). "Fair presentation requires that the petitioner describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* at 1009 (quotations omitted); *see Robinson v. Schriro*, 595 F.3d 1086, 1101 (9th Cir. 2010). "A claim has not been fairly presented in state court if new factual allegations either fundamentally alter the legal claim already considered by the state courts, or place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014) (en banc) (internal quotations and citations omitted). If the claim is fundamentally altered and state procedural rules would bar the petitioner from bringing the developed claim in state court, the claim is technically exhausted and deemed to be procedurally defaulted. *See id.* at 1317–18; *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Such defaults may be excused if the petitioner can demonstrate cause for the default and resulting prejudice. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In his postconviction petition in state court, Atkins raised a claim that trial counsel was ineffective at the penalty phase for failing to conduct an adequate investigation to discover mitigating evidence. He argued that given the timing of counsel Melia's withdrawal after the preliminary hearings

and later reappointment to the case less than two weeks before trial, along with the inexperience of second-chair counsel Kozal, they could not have conducted a proper investigation. Atkins argues that additional investigation would have resulted in counsel presenting as mitigation witnesses his brother Shawn, his mother, an uncle, and his foster parents. These witnesses, according to Atkins, would have corroborated and added to the testimony from Sterling, Sr. about the emotional and physical abuse Atkins suffered during his childhood.

However, Atkins did not present any evidence to the state court in support of his claim, but instead relied on the trial record. The Nevada Supreme Court rejected his claim, noting that counsel presented evidence of Atkins's abusive childhood through testimony by Sterling, Sr. and Normand, and that Atkins "failed to explain how additional testimony would have altered the outcome at trial."

In his federal petition, Atkins again argued that counsel failed to prepare adequate mitigating social history evidence, asserting that "[o]ther family members and relatives could have told a very much more compelling story." He again asserted that Melia's reappointment so close to the trial date and Kozal's relative inexperience in capital cases made it "impossible for [them] to have conducted an adequate investigation" or made strategic decisions to forego certain avenues of mitigation. And, for the first time, Atkins provided declarations from both Melia and Kozal, as well as their state bar admission records. He also provided declarations from his brother Shawn, his aunt, his great aunt, and Doyle's girlfriend. Atkins argues these witnesses would have presented additional testimony regarding his family's intergenerational history of violence; details of his parents' abuse of the children and each other; various family

members' addictions to gambling, alcohol, and drugs; times his family lived in shelters or were homeless; his poor school performance, child-like mentality, and emotional instability; Doyle's violence toward his girlfriend; and one witness's plea deal with the police to testify against Doyle and possibly Atkins.

The district court concluded the ineffective assistance of counsel claim was exhausted and not "fundamentally alter[ed]" from that presented to the state court. *Atkins*, 2020 WL 3893628, at *29. Applying AEDPA review, the district court then determined that the Nevada Supreme Court's denial was not contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* In the alternative, the district court held that if the claim was fundamentally altered and therefore not exhausted, Atkins had not shown the ineffectiveness of postconviction counsel necessary for waiver of procedural default. *See Martinez*, 566 U.S. at 17. The district court stated that neither trial counsel's failure to present the new evidence in the penalty phase nor postconviction counsel's failure to present the new evidence in support of the underlying ineffective assistance of counsel claim was prejudicial. *Atkins*, 2020 WL 3893628, at *30.

We agree with the district court that Atkins properly exhausted this claim in state court. The legal basis for Atkins's claim in his habeas petition is the same as that raised in state court—ineffective assistance of counsel for failure to properly investigate and present mitigating evidence during the penalty phase. Although he proffered new factual allegations and evidence in the district court in the form of the state bar records, declarations from counsel, and declarations from additional social history mitigation witnesses, we cannot say that these "place the case in a

significantly different and stronger evidentiary posture."
*Dickens*, 740 F.3d at 1318.

In *Williams v. Filson*, for example, we found that expert
evidence presented for the first time in federal court that
corroborated allegations raised in the state petition regarding
the nature of the victim's wounds did not transform it into a
new and unexhausted claim. 908 F.3d 546, 574–75 (9th Cir.
2018). Additionally, in that case, evidence presented in
federal court that counsel's office was understaffed only
expanded on the allegation made in state court that counsel
was inexperienced and overworked but did not "alter the
substance" of what was presented in state court. *Id.* at 573.
Therefore, it did not transform the federal claim into a new,
unexhausted claim. *Id*.

Similarly here, the evidence raised in federal court[9]
corroborates the specific allegations raised in Atkins's state
postconviction petition, arguably expanding and
substantiating his argument that counsel failed to perform a
proper investigation into mitigating social history evidence.
The declarations and witnesses presented in federal court
supported the claim previously raised and did not set forth
conditions or allegations that were not raised in state court.
*Compare with Dickens*, 740 F.3d at 1319. Rather, the new
evidence bolsters Atkins's original state court claim that
Kozal's inexperience and Melia's late return to the team
resulted in inadequate investigation of mitigating evidence

---

[9] We review this newly presented evidence solely for the purpose of
evaluating the possible procedural default of Atkins's claim, i.e., whether
the claim is fundamentally altered in federal court. We acknowledge that
review of the merits of Atkins's argument is generally limited to the
record before the state court. 28 U.S.C. § 2254(d); *see Shoop v. Twyford*,
596 U.S. 811, 818–19 (2022); *see also Shinn v. Ramirez*, 596 U.S. 366,
382 (2022).

and witnesses. *See Filson*, 908 F.3d at 573–75 (explaining that evidence that substantiated and corroborated the state court claim did not transform it into a new claim); *Sivak v. Hardison*, 658 F.3d 898, 908 (9th Cir. 2011) ("[A]s long as the ultimate question for disposition has remained the same in state and federal court, . . . variations in the legal theory or factual allegations urged in its support are entirely legitimate." (internal quotation marks and citation omitted)).

Because Atkins's claim was exhausted, our review is governed by 28 U.S.C. § 2254(d), and we are limited to considering evidence that was presented to the state court. *See Shoop v. Twyford*, 596 U.S. 811, 818–20 (2022). In determining if trial counsel was ineffective, we evaluate (1) whether counsel's performance was deficient, and (2) whether that deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. We apply a strong presumption that counsel's performance was within the wide range of reasonable professional assistance, and will find a performance deficient only if it "fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Atkins must show a reasonable probability—i.e., a probability sufficient to undermine confidence in the outcome—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Nevada Supreme Court determined that counsel's performance was neither deficient nor prejudicial and thus was "not contrary to, [and did not involve] an unreasonable application of" *Strickland*. *See* 28 U.S.C. § 2254(d)(1). Although there is documentation of hours billed by counsel, the record does not include much additional information to show what avenues of investigation counsel followed, how much investigation was performed, or what information was

uncovered. Neither does the record reveal what, if any, avenues counsel failed to pursue. This lack of evidence is fatal to Atkins's claim. The burden to demonstrate that counsel performed deficiently falls on Atkins, and "the absence of evidence cannot overcome the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (internal quotation marks and citations omitted).

Furthermore, even if Atkins could show deficient performance by counsel, he has not shown prejudice. Kozal's inexperience alone, even combined with the timing of Melia's re-appointment, is insufficient to demonstrate a *Strickland* violation. *Woods v. Sinclair*, 764 F.3d 1109, 1132 (9th Cir. 2014) ("[Petitioner] must point to specific acts or omissions that may have resulted from counsel's inexperience and other professional obligations."). The state court record did not include declarations from the potential witnesses, and so did not contain any showing of what additional mitigating evidence counsel could have presented. Atkins cannot demonstrate that the Nevada Supreme Court's denial of this claim was unreasonable because there was no additional mitigating evidence for the Nevada Supreme Court to evaluate. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.").

Even assuming without deciding that we could consider the new evidence submitted by Atkins, the outcome remains the same. None of Atkins's proffered new evidence, including the declarations from counsel, address what investigation counsel undertook regarding Atkins's background or social history. Furthermore, the testimony

presented during the penalty phase demonstrates that counsel did investigate, discover, and present evidence that Atkins had an abusive childhood, grew up in a dysfunctional environment, and likely has a learning disability and impaired thinking. Atkins has not shown deficient performance by counsel.

Moreover, because the evidence presented in the new witnesses' declarations is largely cumulative of the mitigation evidence presented at trial through Sterling, Sr., Normand, and Dr. Colosimo, Atkins cannot show prejudice from any deficient performance that may have occurred. Simply presenting the jury more detailed evidence about the family abuse, Atkins's parents' alcoholism, his poor performance in school, and his emotional instability is unlikely to add to the weight of mitigating evidence already in the record. *See Moorman v. Ryan*, 628 F.3d 1102, 1113 (9th Cir. 2010) (finding no prejudice because of the "cumulative nature of the new evidence"). Any limited new information regarding the family's generational history of violence, the parents' addictions, periods of homelessness, or the influence of street gangs on Atkins's behavior has questionable mitigating value. While "defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional or mental problems, may be less culpable than defendants who have no such excuse," *Boyde v. California*, 494 U.S. 370, 382 (1990) (internal citations omitted), the jury "might have concluded that [Atkins] was simply beyond rehabilitation." *Pinholster*, 563 U.S. at 201. Therefore, even considering the new evidence, Atkins has not demonstrated that trial counsel's failure to present additional background and social history was either due to deficient performance or prejudicial. The Nevada Supreme Court's rejection of this claim was reasonable.

Finally, to the extent Atkins argues the Nevada Supreme Court's conclusion was based on an unreasonable factual finding under § 2254(d)(2), the evidence proffered by Atkins was largely cumulative of the evidence presented during trial.  Also, Atkins incorrectly references a district court finding (and not a finding by the Nevada Supreme Court) and improperly relies on the new evidence submitted in federal court.  *See Twyford*, 596 U.S. at 819 ("Review of factual determinations under § 2254(d)(2) is expressly limited to the evidence presented in the State court proceeding." (internal quotation marks and citation omitted)).

Atkins has not shown how trial counsel acted deficiently regarding preparation of social history evidence, or that prejudice resulted.  Thus, he has failed to show that the Nevada Supreme Court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established" federal law, or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).[10]

**ii.**

For his second claim of ineffective assistance of counsel, Atkins argues that trial counsel failed to properly prepare and present Dr. Colosimo during the penalty phase.  Atkins asserts that, as a result, Dr. Colosimo offered harmful testimony equivalent to that of a prosecution witness such that the testimony itself satisfies *Strickland*'s prejudice prong.  We find that Atkins failed to exhaust this claim in

---

[10] Because we find that the claim was exhausted in state court, we do not address the parties' alternative arguments under *Martinez v. Ryan*, 566 U.S. 1 (2012).

state court and cannot meet the requirements of *Martinez* to excuse the default. We therefore affirm the district court's denial.

In his state postconviction proceedings, Atkins claimed that counsel was ineffective for failing to investigate and present psychological evidence at the guilt phase of trial. He criticized counsel's failure to move for a competency hearing until the middle of jury selection, despite knowing that Atkins had potential mental health issues. Atkins argued that counsel should have requested a competency hearing earlier in the proceedings. Additionally, he asserted that counsel should have either raised a mental incapacity defense or argued that his mental health state was inconsistent with premeditated first-degree murder.

The Nevada Supreme Court affirmed the lower court's ruling that whether and when to raise competency issues was a strategy determination and noted that "Atkins [had] not indicated what material evidence would have been discovered through additional investigation into his mental status, or how that evidence would have affected the outcome of trial." The court further observed that Dr. Colosimo had testified that Atkins was competent at the time he committed the crimes. Regarding the argument that counsel failed to timely move for a competency hearing and then acted deficiently by withdrawing the motion, the Nevada Supreme Court determined the argument was without merit because Atkins established neither that he was incompetent nor that a competency hearing was required.

In contrast to his argument in state court related to the guilt phase of trial, in his federal petition, Atkins argued that counsel was ineffective for failing to adequately prepare and present Dr. Colosimo for the *penalty* phase. Atkins asserted

that counsel's failure, in part, was that Kozal—an inexperienced new lawyer—was Dr. Colosimo's primary contact and only contacted him a few weeks prior to trial. The district court characterized the state court claim as a failure by counsel "to adequately investigate, consult, or produce and offer psychological evidence at the trial," and concluded that Atkins had exhausted the claim in state court. *Atkins*, 2020 WL 3893628, at *30. The district court then concluded that the Nevada Supreme Court's denial was reasonable under AEDPA because the record showed counsel had investigated and used psychological evidence and Atkins had not shown what new evidence could have been discovered. Additionally, the district court found the Nevada Supreme Court reasonably determined Atkins failed to show prejudice because Dr. Colosimo's testimony, when considered as a whole, helped rather than harmed the defense in the penalty phase. *Id*. at *31. In the alternative, the district court determined that if the claim was procedurally defaulted, and accordingly it could consider the new evidence, Atkins did not demonstrate the cause and prejudice necessary under *Martinez* to excuse the default. *Id*.

We hold that the district court erred in finding this claim to be exhausted. Atkins did not fairly present to the state court a claim related to Dr. Colosimo's preparation for the penalty phase; rather, his state claim related to the use of Dr. Colosimo in the guilt phase. Additionally, Atkins did not allege in state court that Dr. Colosimo's penalty phase testimony was prejudicial or identify which portions of his testimony were problematic. Thus, the claim has been "fundamentally altered" such that the Nevada Supreme Court did not have a fair opportunity to consider the claim,

and it is therefore unexhausted and procedurally defaulted. *Dickens*, 740 F.3d at 1319.[11]

Under *Martinez*, ineffective assistance of postconviction counsel may serve as valid cause to overcome the procedural default of a claim of ineffective assistance of trial counsel. The petitioner must satisfy four factors. First, the state postconviction proceeding must be the initial review proceeding in respect to the ineffective assistance of counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013). Second, the state law must either require the claim to be raised in the first postconviction proceeding or make "it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 423, 429. Third, a petitioner must show "cause" by demonstrating that postconviction counsel was ineffective for failing to raise the underlying ineffective assistance of trial counsel claim. *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014). In other words, a petitioner must show that postconviction counsel's performance was deficient and such deficiency was prejudicial. *Id.* To find that postconviction counsel's deficient performance was prejudicial, "[we] must also find a reasonable probability that the trial-level [ineffective assistance of counsel] claim would have succeeded had it

---

[11] Atkins argues that the State waived a non-exhaustion defense by failing to raise it in district court. Under AEDPA, however, the State's failure to raise such a defense does not constitute waiver. *See Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("AEDPA forbids a finding that exhaustion has been waived unless the State expressly waives the requirement."); 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

been raised." *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016). "If the [trial-level claim] lacks merit, then [postconviction] counsel would not have been deficient for failing to raise it." *Atwood v. Ryan*, 870 F.3d 1033, 1060 (9th Cir. 2017). Fourth—in an analysis that somewhat overlaps with the third factor—a petitioner must show prejudice by "demonstrat[ing] that the underlying [ineffective assistance of counsel] claim is a substantial one, which is to say that [the petitioner] must demonstrate the claim has some merit." *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

The first two factors are not in dispute here. *See Rodney v. Filson*, 916 F.3d 1254, 1260 (9th Cir. 2019) (noting that Nevada requires ineffective assistance of counsel claims to be raised in the first postconviction proceeding). Atkins on appeal has not argued cause and prejudice under *Martinez* to excuse the procedural default. But even assuming we might excuse that failure, Atkins is not entitled to relief under *Martinez* because he has not shown he was prejudiced by trial counsel's performance. Thus, there is no substantial likelihood of a different result had postconviction counsel raised the underlying trial counsel claim.

Atkins first argues that his trial counsel failed to timely obtain a mental health expert. While some cases have found counsel may be ineffective for failing to timely obtain mitigation evidence for a penalty phase proceeding, *see, e.g., Williams v. Taylor*, 529 U.S. 362, 395 (2000), the record here indicates that counsel knew of Atkins's potential mental health issues and took appropriate steps to seek a mental health expert as mitigation evidence. Approximately six months before trial, Atkins's original counsel filed a motion to allow an expert to perform a psychiatric examination on Atkins, and the court eventually granted that motion. Two

weeks before trial (on the same day Atkins's original counsel withdrew), that expert informed counsel he was unavailable to perform the evaluations. Six days later, counsel filed (and the court granted) authorization to substitute Dr. Colosimo as the expert. Dr. Colosimo conducted interviews before, during, and after the guilt phase of trial. At least two reports were available for counsel during the guilt phase of trial. Based on this record, Atkins has not rebutted the presumption that counsel's investigation into mental health mitigation fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689–90; *cf., Taylor*, 529 U.S. at 395–96 (finding counsel's performance deficient when they did not begin preparing for the penalty phase until a week before trial and unreasonably curtailed their investigation into mitigating evidence).

Atkins next argues that trial counsel failed to adequately prepare Dr. Colosimo to testify which resulted in harmful testimony. Dr. Colosimo stated that trial counsel did not provide any police reports or witness statements, and that he did not review any documents related to the case or the underlying facts or circumstances. Dr. Colosimo instead relied only on Atkins's statements to him and the results of the tests he performed. At the penalty phase of a trial, "[r]egardless of whether a defense expert requests specific information relevant to a defendant's background, it is defense counsel's duty to seek out such evidence and bring it to the attention of the experts." *Hovey v. Ayers*, 458 F.3d 892, 925 (9th Cir. 2006) (internal quotation marks omitted). This includes facts pertinent to the crimes, which trial counsel here failed to provide Dr. Colosimo.

While that failure perhaps raises questions as to the thoroughness of trial counsel in their preparation of Dr. Colosimo, Atkins has not shown that it was prejudicial.

Atkins argues that Dr. Colosimo provided negative testimony related to his mental health that made him seem impulsive, delusional, paranoid, and selfish. Atkins claims that this, in turn, made him seem unlikely to socialize or otherwise adjust to life in prison and seem more likely to commit future violent acts. According to Atkins, Dr. Colosimo failed to link his condition to his childhood problems, and instead suggested Atkins had high potential for recidivism. Additionally, Atkins claims that Dr. Colosimo's statement that he had not seen any reports or documents related to the case detracted from his credibility. Finally, Atkins points to Dr. Colosimo's statements that Atkins was competent at the time of the crime and that he showed no remorse for Mason's murder.

As discussed above, mitigating evidence like Dr. Colosimo's testimony can present a double-edged sword as it can yield both helpful and harmful inferences. *See Pinholster*, 563 U.S. at 201. Atkins argues that Dr. Colosimo's testimony was so harmful, he would have been better off had Dr. Colosimo not testified at all. However, in looking at the totality of the mitigating and aggravating evidence presented at the penalty phase, we cannot say that the omission of Dr. Colosimo's testimony would have affected the outcome of the proceeding. Although Atkins portrays it as primarily harmful, Dr. Colosimo's testimony also supported helpful inferences. For instance, the testimony explained Atkins's behavior, and connected his diagnoses to his childhood. Dr. Colosimo also concluded that prison would provide a controlled and stable environment where Atkins could likely conform his behavior. Furthermore, his allegedly harmful testimony regarding Atkins's lack of a moral structure, mental health concerns, and the possibility of recidivism is similar to

testimony whose *omission* we have found to support a finding of ineffective assistance of counsel. *See, e.g.*, *Douglas v. Woodford*, 316 F.3d 1079, 1090–91 (9th Cir. 2003) (finding counsel was ineffective for failing to present evidence that the defendant suffered from "serious and outstanding mental illness" including severe paranoia, pre-existing neurological deficit, and chaotic thought process); *Ainsworth v. Woodford*, 268 F.3d 868, 879 (9th Cir. 2001) (finding prejudicial counsel's failure to present defendant's "disadvantaged background and the emotional and mental problems" defendant faced). It follows that including this type of evidence here does not itself show prejudice.

The potential harm is also not as great as Atkins suggests. The aggravating factors were significant. The jury was aware of the brutal circumstances surrounding Mason's death—which included attempted kidnapping, avoidance of lawful arrest, sexual assault, and mutilation of the victim—and of Atkins's prior conviction for assault with a deadly weapon. *See Stankewitz v. Wong*, 698 F.3d 1163, 1174 (9th Cir. 2012) ("To the extent additional evidence of the violent emotional outbursts that are part of Stankewitz's history would have had an aggravating impact, it would have been marginal relative to the evidence of antisocial behavior already before the jury."). Balanced against the aggravating factors, the jury considered the mitigating evidence regarding the abuse Atkins suffered as a child, that his parents were violent alcoholics, and that he had been placed in foster care. Dr. Colosimo's testimony appears unlikely to have substantially affected the relative weights of the aggravating and mitigating evidence. *See Thornell v. Jones*, 602 U.S. 154, 171-72 (2024) (noting the analysis "requires an evaluation of the strength of all the evidence and a

comparison of the weight of aggravating and mitigating factors").

Thus, Atkins has not met the requirements of *Martinez* to excuse his procedural default because he fails to establish a reasonable probability that the underlying claim of ineffective assistance of trial counsel would have succeeded had it been raised. *See Runningeagle*, 825 F.3d at 982; *Atwood*, 870 F.3d at 1060.[12]  We affirm the district court's denial of this procedurally defaulted claim.

### iii.

Atkins's final argument as to ineffective assistance of counsel in the penalty phase is that, under a cumulative analysis, he was prejudiced by counsel's conduct as a whole. "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (internal citation omitted).  Here, however, Atkins has not shown the accumulation of multiple errors.  Even accepting that Dr. Colosimo could have been better prepared before testifying at the penalty phase, Atkins did not show deficient performance in counsel's investigation or presentation of mitigating social history evidence.

---

[12] We note that even if the claim had been properly exhausted, *de novo* analysis suggests that the Nevada Supreme Court's denial of the claim was reasonable under AEDPA. *See Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) (recognizing that where a claim fails under *de novo* review, denial of the claim by the state court must necessarily be reasonable under AEDPA's more deferential standard of review).

\*       \*       \*       \*

To summarize our disposition of this first certified issue, Atkins's claim that trial counsel was ineffective for failing to investigate and present additional mitigating social history evidence during the penalty phase was reasonably denied by the Nevada Supreme Court.  The record before the state court did not show what investigation did occur, or how that investigation was deficient, and because the new evidence presented in the federal proceeding was largely cumulative it does not establish prejudice.  His claim that trial counsel failed to adequately prepare Dr. Colosimo before testifying was not exhausted in state court, is now procedurally defaulted, and he cannot meet the *Martinez* standard to excuse his default.  Given that Atkins has shown, at most, only one possible failing by counsel, there is no cumulative prejudice to consider.  We affirm the district court.

## B.

In the second certified issue, Atkins argues that the trial court erred in allowing the jury to speculate that he could be paroled or granted clemency if he received a sentence of life without parole.  He contends the so-called *Petrocelli* instruction[13] was both misleading and inaccurate and that the

---

[13] The jury was instructed:

> Life imprisonment with the possibility of parole is a sentence of life imprisonment which provides that a defendant would be eligible for parole after a period of ten years. This does not mean that he would be paroled

prosecutor impermissibly invited the jury to speculate about the possibility of parole. *See Petrocelli v. State*, 692 P.2d 503, 511 (Nev. 1985) (setting forth a uniform clemency instruction), *superseded in part by statute as stated in Thomas v. State*, 83 P.3d 818, 823 (Nev. 2004). He also asserts that his state court appellate counsel was ineffective for failing to raise this claim on direct appeal. We find that this jury instruction claim was unexhausted in state court and is now procedurally barred. Moreover, Atkins has not shown cause to excuse that default. He similarly failed to exhaust the related claim of ineffective assistance of appellate counsel.

Although Atkins presents these as separate subclaims in his federal petition, because they are intertwined, we summarize the Nevada Supreme Court's handling of them together. In his first state postconviction petition, Atkins raised a broad claim of ineffective assistance by the attorney who handled his direct appeal in state court. He specifically argued that state appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim related to the prosecutor's cross-examination of former Associate Warden

---

after ten years, but only that he would be eligible after that period of time.

Life imprisonment without the possibility of parole means exactly what it says, that a defendant shall not be eligible for parole.

If you sentence a defendant to death, you must assume that the sentence will be carried out.

Although under certain circumstances and conditions the State Board of Pardons Commissioners has the power to modify sentences, you are instructed that you may not speculate as to whether the sentence you impose may be changed at a later date.

Jack Hardin.  Atkins argued that the prosecutor elicited testimony from Hardin that incorrectly stated the State Board of Pardons could issue a pardon or commute his sentence. According to Atkins, this presented an unacceptable risk that the jury might have improperly imposed the death sentence based on concern for his possible future release from prison. The Nevada Supreme Court concluded this claim was without merit, stating that Atkins failed to identify why the prosecutor's statements were improper and that Hardin's testimony was not a misstatement of the authority of the Board of Pardons.  It therefore concluded that state appellate counsel was not ineffective for failing to raise the issue.

In his federal petition Atkins raised a different challenge, arguing that the *Petrocelli* instruction regarding the power of the Board of Pardons was irrelevant and misleading given that Nevada Revised Statute § 213.1099(4) prohibited the State Parole Board from paroling certain prisoners.[14] Furthermore, he argued that the prosecutor compounded the error by inviting the jury during the penalty phase closing argument to speculate as to the possibility that a life without parole sentence could be reduced or modified (we refer to these two together as the "*Petrocelli* instruction claim").  In his associated ineffective assistance of appellate counsel claim, Atkins generally asserted that if any court found any record-based claims were not raised on direct appeal, it was because appellate counsel was ineffective.

---

[14] Nevada Revised Statute § 213.1099(4) prohibits the Parole Board from releasing on parole a "prisoner whose sentence to death or to life without possibility of parole has been commuted to a lesser penalty unless [it] finds that the prisoner has served at least 20 consecutive years in the state prison" and the prisoner "does not have a history of . . . [f]ailure in parole, probation, work release or similar programs."

The district court ruled that the *Petrocelli* instruction claim had not been raised on direct appeal in state court and therefore was not exhausted. *Atkins*, 2020 WL 3893628 at \*46, \*48. The district court further determined that Atkins failed to demonstrate cause and prejudice to overcome the procedural default. *Id*. at \*48. We agree. Regarding the ineffective assistance of appellate counsel claim, the district court found the Nevada Supreme Court's denial to be reasonable under AEDPA. *Id*. at \*46–48. While the district court may have misconstrued the Nevada Supreme Court's ruling, we affirm because this ineffective assistance of counsel claim is unexhausted and procedurally defaulted.

**i.**

We agree with the district court that the *Petrocelli* instruction claim is unexhausted. Atkins never presented a challenge to the *Petrocelli* instruction in state court, and the Nevada Supreme Court ruling accordingly did not address such a claim. *See Cook v. Schriro*, 538 F.3d 1000, 1025 (9th Cir. 2008) ("We may not consider any federal-law challenge to a state-court decision unless the federal claim was either addressed by or properly presented to the state court that rendered the decision we have been asked to review." (internal quotation marks and citation omitted)). Atkins's argument that the Nevada Supreme Court considered the underlying substantive jury instruction claim when it denied the related broad ineffective assistance of appellate counsel claim is without merit because a fairly-presented ineffective assistance claim does not on its own exhaust an underlying substantive claim. *See Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005) ("While admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts."). Furthermore, the Nevada Supreme

Court expressly stated, "To the extent that Atkins raises independent constitutional claims, they are waived because they were not raised on direct appeal."

The *Petrocelli* instruction claim would now be considered technically exhausted but procedurally defaulted because if raised in state court, it would be dismissed under Nevada's procedural rules for failure to raise it on direct appeal, untimeliness, and laches. *See* Nev. Rev. Stat. §§ 34.810, 34.726, 34.800. Atkins argues that even if unexhausted, it is not procedurally defaulted because the procedural bar in Nevada Revised Statute § 34.810—which requires a petition to be dismissed when its claims could have been raised on direct appeal—is inadequate to bar federal review. He cites to *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002) (en banc), which supports his argument that "Nevada's procedural rules barring petitioners from raising constitutional claims that could have been raised previously are not adequate to bar federal review in capital cases." *Id.* at 778. However, as argued by the State, and not contested by Atkins, Nevada's other procedural rules are sufficient to bar federal review. *See Loveland v. Hatcher*, 231 F.3d 640, 642–43 (9th Cir. 2000) (affirming that Nevada's statute of limitations bar is adequate); *Moran v. McDaniel*, 80 F.3d 1261, 1269–70 (9th Cir. 1996) (finding that Nevada's laches bar is adequate). Thus, because Nevada's procedural rules are adequate bars to federal review, the *Petrocelli* instruction claim is procedurally defaulted.

In an alternative attempt to excuse the default, Atkins argues he was unable to bring the claim earlier because it relies on *Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir. 2008), a case decided after he filed his first postconviction petition. In *Sechrest*, the prosecutor repeatedly informed the jury that

the defendant would not actually serve a life sentence if the jury sentenced him to life without parole, that prisoners are released even if they are sentenced to life without parole, and that the Board of Pardons had the ultimate authority to pardon anyone. *Id.* at 808–09, 812–13. We concluded this was misconduct because under Nevada Revised Statute § 213.1099(4), the defendant was not eligible for parole. *Id.* at 810. Furthermore, we observed that the *Petrocelli* instruction contributed to the error as it was misleading when applied to the defendant because it confirmed the prosecutor's false comments on the possibility of parole. *Id.* at 812. The prosecutor's misconduct was prejudicial because it removed the jury's choice between a life and death sentence by repeatedly stating that unless the defendant was sentenced to death, he would be released and kill again. *Id.* at 812–13.

Although "a showing that the factual or legal basis for a claim was not reasonably available to counsel" can demonstrate "cause" to excuse a procedural default, *Carrier*, 477 U.S. at 488, that is not the case here. When Atkins filed his first state postconviction petition, available case law—which was relied on in *Sechrest*—offered a reasonable basis to challenge the *Petrocelli* instruction. *See Villafuerte v. Stewart,* 111 F.3d 616, 629 (9th Cir. 1997) (per curiam) (concluding that the petitioner did not demonstrate cause based on an opinion issued after he filed his state habeas petition, because he had "the tools to construct [this] constitutional claim" (quoting *Engle v. Isaac*, 456 U.S. 107, 133 (1982))). Specifically, Atkins could have relied on *Smith v. State*, 802 P.2d 628 (Nev. 1990), which was decided before the conclusion of Atkins's trial and discussed in *Sechrest*. In *Smith*, the court explained that the Parole Board was restricted from granting parole under Nevada Revised

Statute § 213.1099(4) for certain types of prisoners such as Atkins. *Smith*, 802 P.2d at 630. Additionally, Atkins could have relied on cases decided prior to his first state postconviction petition that discussed the contributing prejudicial effect of a commutation instruction, which he cites in his brief to this court. *See, e.g.*, *Gallego v. McDaniel*, 124 F.3d 1065 (9th Cir. 1997); *Simmons v. South Carolina*, 512 U.S. 154 (1994); *California v. Ramos*, 463 U.S. 992 (1983). Thus, the timing of *Sechrest* does not excuse the default of the jury instruction claim.

Atkins also suggests—in a one-line conclusory sentence in his reply brief—that his counsel's failure to raise the *Petrocelli* instruction claim on direct appeal provides cause to excuse the procedural default. This argument is both waived, *see Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) ("Arguments raised for the first time in petitioner's reply brief are deemed waived."), and lacks merit. To make such an argument, Atkins would have to establish he exhausted an ineffective assistance of appellate counsel claim based specifically on failure to raise the *Petrocelli* instruction claim. *See Carrier*, 477 U.S. at 489 ("[A] claim of ineffective assistance" generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). As we discuss below, Atkins failed to do so.

**ii.**

Atkins argues that the broad catch-all ineffective assistance of counsel claim he raised in his state

postconviction proceedings exhausted a more specific claim of ineffective assistance of counsel for failing to raise the *Petrocelli* instruction error as such. According to Atkins, he has thus shown cause to excuse the procedural default of the *Petrocelli* instruction claim. However, the general claim raised in state court cannot exhaust a new specific argument raised in federal habeas. Despite the district court's assertion to the contrary, we see no reference to the *Petrocelli* instruction in the Nevada Supreme Court's ruling. *Atkins*, 2020 WL 3893628 at \*46–47. Considering that Atkins never raised the *Petrocelli* instruction in state court, it follows that the Nevada Supreme Court would not have had the opportunity to consider whether counsel was ineffective for failing to raise such an argument on direct appeal. Neither did Atkins allege in his state postconviction petition that counsel was ineffective for failing to challenge the prosecutor's statements in closing argument. Atkins's new allegations in federal court as to the *Petrocelli* instruction thus fundamentally alter the broad ineffective assistance of counsel claim considered by the Nevada Supreme Court. *See Dickens*, 740 F.3d at 1318–19; *see also Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005) (finding unexhausted a more specific ineffective assistance claim for using only one expert to present an insanity defense when petitioner raised in state court an ineffective assistance of counsel claim for failing to investigate and present a viable defense). Atkins's broad ineffective assistance of counsel claim in the state courts, therefore, does not exhaust an ineffective assistance claim specific to the *Petrocelli* instruction.

The specific ineffective assistance claim is also procedurally defaulted. Atkins argues that, under Nevada Rules of Civil Procedure, the claim relates back to the broad

ineffective assistance claim raised in his first state postconviction petition. But Nevada Revised Statute § 34.750 addresses pleadings in postconviction proceedings and prohibits supplemental pleadings beyond certain time limits unless ordered by the court. This statute controls over Nevada's Rules of Civil Procedure. *See State v. Powell*, 138 P.3d 453, 457–58 (Nev. 2006). Additionally, Atkins does not explain how exactly this claim would relate back to the previous petition, which has already been resolved. Thus, relation back does not solve Atkins's procedural default problem.

Because Atkins raises no additional arguments to support his assertion that his claim is not procedurally defaulted and does not argue that there is cause to excuse the default, we affirm the district court's denial of the claim. That, in turn, prevents Atkins from overcoming his default of the *Petrocelli* instruction claim, and we affirm the district court's denial of that claim as well.

## IV.

Atkins seeks to expand the certificate of appealability to include two additional issues. We deny his request as to both.

A petitioner seeking to expand a certificate of appealability "must demonstrate that reasonable jurists would find the district court's assessment of the . . . claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petitioner seeks a certificate of appealability on the denial of a procedural issue, the court must determine whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and whether "jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." *Id.*

## A.

Atkins first asks us to expand the certificate of appealability to include his claim that trial counsel performed deficiently in the guilt phase by failing to timely investigate his psychological background and have him evaluated by an expert. Atkins points to different portions of Dr. Colosimo's penalty phase testimony as examples of what could have been used at the guilt phase to support a defense that he lacked the specific intent to commit murder. Specifically, Atkins references testimony as to his schizo-affective disorder, impulsive thought, diminished capacity, paranoid traits, drug experimentation, childhood head injury, delusional thinking, low IQ score, and generally impaired thinking. All these, according to Atkins, could have been used to show diminished capacity, lack of culpability, and an inability to premeditate a murder.

In state court, Atkins raised an ineffective assistance of counsel claim for failing to investigate and present psychological evidence at trial.[15] The Nevada Supreme Court concluded Atkins was not entitled to relief because counsel had undertaken investigation and Atkins had not shown what additional evidence would have been

---

[15] This is the same claim that Atkins argues should be considered to have exhausted his certified claim of ineffective assistance of counsel in failing to prepare and adequately present Dr. Colosimo in the penalty phase. *See supra* Section III.A.

discovered that would have impacted the outcome of trial.[16] The Nevada Supreme Court concluded that Atkins had not shown that his counsel performed unreasonably or that he was prejudiced. In his federal petition, Atkins alleged that his counsel failed to have him timely evaluated for competence and failed to present any psychological evidence at the guilt phase. The district court held that the Nevada Supreme Court's conclusions as to counsel's performance and the lack of prejudice were reasonable under AEDPA. *Atkins*, 2020 WL 3893628 at *15–16. The district court noted that while Dr. Colosimo testified that Atkins had "various forms of mental illness, there was nothing in his testimony supporting an argument that [Atkins] lacked the mental capacity to form the intent necessary for first-degree murder." *Id.* at *16. The court further stated, "Atkins has never shown that further investigation, or better preparation of Dr. Colosimo, would have led to development of any such evidence." *Id.*

We are not persuaded by the State's argument that this claim is fundamentally altered because Atkins did not assert a claim related to failure to perform additional evaluation in state court. Despite new factual allegations in federal court that certain specific tests should have been performed, the substance of the ineffective assistance claim is the same: counsel was deficient in failing to timely request a competency hearing and failing to investigate and present a mental health defense that could have contradicted premeditation. The new allegations in federal court do not

---

[16] Specifically, the Nevada Supreme Court noted that Atkins had met with Dr. Colosimo six times, Dr. Colosimo had conducted psychological testing on three occasions and spent a total of nine hours with Atkins, and Dr. Colosimo had provided Atkins's counsel with his written report and testified at the penalty phase hearing in mitigation of punishment.

"fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). Neither do the new allegations place the legal claim in a "significantly different and stronger evidentiary posture" than that presented in state court. *Filson*, 908 F.3d at 574; *see also Weaver v. Thompson*, 197 F.3d 359, 364–65 (9th Cir. 1999) (explaining that new factual allegations did not fundamentally alter the claim because the legal basis was the same and the factual basis remained "rooted in the same incident").

Atkins argues that the Nevada Supreme Court's denial on the merits was an unreasonable determination of fact as well as an unreasonable application of *Strickland*. However, there is no indication here of deficient performance by trial counsel. Although failure to conduct a prompt investigation into a defendant's mental health can signify deficient performance, *see, e.g.*, *Crittenden v. Ayers*, 624 F.3d 943, 960–61 (9th Cir. 2010), counsel here did not fail to conduct an investigation.[17] Atkins's counsel knew of his potential mental health issues and requested court approval for an evaluation months before trial, and when the first expert was unavailable successfully obtained authorization to substitute Dr. Colosimo. Atkins's counsel also sought a continuance for a competency hearing after receiving the initial report from Dr. Colosimo, but then withdrew that request after receiving Dr. Colosimo's second report. Atkins's counsel did not wait until the last minute to seek court authorization for an expert. Considering the circumstances counsel faced,

---

[17] Under 28 U.S.C. § 2254(d), we consider only the evidence presented to the state courts. *See Twyford*, 596 U.S. at 819. To the extent Atkins attempts to rely on new declarations from counsels Melia and Kozal, we do not consider them.

including the delay in getting authorization for fees, the first expert's unexpected unavailability, and the short time between Melia's appointment as lead counsel and the start of trial, it does not appear that counsel performed deficiently for failing to have Atkins more promptly evaluated. *See Strickland*, 466 U.S. at 688 ("[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."). Furthermore, as previously noted, Atkins's counsel apparently made a strategic decision to withdraw the motion for a competency hearing and use Dr. Colosimo solely for the penalty phase.

But even assuming Atkins's trial counsel performed deficiently, the Nevada Supreme Court's finding of lack of prejudice was reasonable. Dr. Colosimo's findings could not have supported a diminished capacity defense because Nevada does not recognize such as a defense. *See Crawford v. State*, 121 P.3d 582, 591 (Nev. 2005) ("[T]he technical defense of diminished capacity is not available in Nevada."); *Miller v. State*, 911 P.2d 1183, 1185–87 (Nev. 1996) (distinguishing the viable defense of legal insanity from unusable defense of diminished capacity). To the extent Atkins argues Dr. Colosimo's testimony would have demonstrated he was less culpable, the State presented evidence of felony murder, conspiracy to commit murder, and aiding and abetting theories of liability in addition to premeditation. Evidence as to level of culpability is typically the focus of sentencing. And, as to premeditation, Dr. Colosimo's perspective would not have provided much to negate the other evidence supporting a finding that Atkins did premeditate killing Mason, or aided and abetted the premeditated killing of Mason. The jury heard evidence that Atkins, Doyle, and Shawn killed Mason because they believed she was going to report a rape, and that Atkins

prevented her from calling the police.  The jury also heard evidence about the manner of killing, the three shoe impressions around her body, and the signs of considerable blunt and sharp trauma, sexual assault, lacerations, and a ligature mark around her neck.  *See Hern v. State*, 635 P.2d 278, 281 (Nev. 1981) ("The nature and extent of the injuries, coupled with repeated blows, constitutes substantial evidence of willfulness, premeditation and deliberation."); *Cortinas v. State*, 195 P.3d 315, 326 (Nev. 2008) ("[T]he use of a ligature and the time required to strangle a person are legitimate circumstances from which to infer that a killing is willful, deliberate, and premeditated.").

Counsel's failure to present testimony from Dr. Colosimo at the guilt phase did not result in a reasonable probability of a different outcome.  *See Strickland*, 466 U.S. at 694.  Because it does not appear debatable that the Nevada Supreme Court's decision was reasonable, we deny Atkins's request to expand the certificate of appealability to include this issue.

## B.

Atkins also requests to expand the certificate of appealability to include his argument that trial counsel Melia was ineffective because she had a financial conflict of interest that discouraged her from requesting a continuance. According to Atkins, Melia knew the judge would not have granted a continuance or appointed her as Atkins's counsel if she indicated she was unprepared to proceed to trial on the scheduled timeline.  Therefore, Atkins argues, Melia was forced to either proceed unprepared to trial or lose out on the financial opportunity of taking Atkins's case.

In his postconviction petition, Atkins raised a claim that the trial court abused its discretion in denying his request for

a continuance.  The Nevada Supreme Court did not address this claim, concluding it had been waived.  In federal court, Atkins alleged Melia had a conflict which caused her to fail to request a continuance.  Although he conceded he did not raise a conflict claim in state court, Atkins argued it should relate back to the prior claims of ineffective assistance of trial counsel.  *Atkins*, 2020 WL 3893628, at *32.  The district court concluded that Atkins had failed to exhaust this claim, that it was procedurally defaulted, and that Atkins failed to demonstrate cause and prejudice to excuse the default.  *Id.* *32–33.

We agree.  At no time in state court did Atkins assert that Melia had a conflict of interest based on potential loss of financial benefit.  The Nevada Supreme Court did not have a "fair opportunity" to evaluate this claim.  *Davis*, 511 F.3d at 1009.

Additionally, Atkins cannot show cause or prejudice to overcome his procedural default.  The record does not demonstrate that Atkins exhausted a claim of ineffective assistance of appellate counsel based on appellate counsel's failure to raise trial counsel's alleged conflict of interest on direct appeal; thus, state appellate counsel's failure to raise this claim on direct appeal cannot serve as cause.  *See Carrier*, 477 U.S. at 488–89; *Edwards*, 529 U.S. at 453.  Moreover, even if Atkins could show ineffective assistance of state postconviction counsel in failing to raise the conflict of interest claim in the initial state habeas proceeding, he fails to argue cause under *Martinez* and his arguments as to prejudice are unpersuasive because the claim is not substantial.

Nor has Atkins shown that his claim should be considered under *Sullivan v. Cuyler*, 446 U.S. 335 (1980),

which allows a presumption of prejudice if there is a showing of an actual conflict of interest affecting the adequacy of representation. *Id.* at 349–50 ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice [] to obtain relief."). We have held that accepting representation for financial benefit is not the type of conflict envisioned by *Sullivan*. *See Bonin v. Calderon*, 59 F.3d 815, 826 (9th Cir. 1995) ("The fact that an attorney undertakes the representation of a client because of a desire to profit does not by itself create the type of direct 'actual' conflict of interest required by [*Sullivan*]."). Furthermore, Atkins has not demonstrated an actual conflict as it does not appear from the record that Melia believed she would have lost the appointment if she requested a continuance, and she stated she was prepared to go to trial. Atkins has also failed to show any deficient performance by counsel or resulting prejudice.

Therefore, the underlying claim of ineffective assistance of counsel based on a conflict of interest does not have even "some merit," and Atkins cannot satisfy the *Martinez* criteria to excuse his procedural default. Because "jurists of reason would [not] find it debatable whether the district court was correct in its procedural ruling," *Lambright*, 220 F.3d at 1026, we deny Atkins's request to expand the certificate of appealability to this issue as well.

## V.

We **AFFIRM** the district court's denial of Atkins's habeas petition and **DENY** Atkins's request to expand the certificate of appealability.